Back on the record for the third case of the morning. This is Appeal 23-2446, Next Millennium Telecom v. American Signal. We're going to begin with Mr. Zahar, and he is appearing remotely. Good morning, Your Honors. May it please the Court? Your Honors, this is an appeal of a dismissal based on failure to prosecute in the Eastern Motions eliminated were filed during instructions, during verdict forms, and all the required documents necessary for trial were filed with the Court at the pretrial conference. Instead of engaging in, you know, pretrial matters, the District Court imposed for the very first time three new conditions on the plaintiff in this case as conditions to appear for trial. And the Court ordered that the plaintiff file a plan within 90 days outlining how the plaintiff was going to accomplish the task. Mr. Zahar, can I ask a question here? This is a breach contract case, right? You filed a product and the product doesn't work. And the defendant, I mean, I just don't . . . this I don't get. The defendant says, well, we need to test the product to make sure it doesn't work, right? I mean, there'd be no defendant in the history of America that would say we're just going to accept your word that the product doesn't work. And there's no effort or no . . . there's nothing that happens in a matter of years to provide the defendant with an opportunity to verify whether or not the product works or not. And you're going to go to trial? So Your Honor, we have never prevented the defendant from traveling to Saudi Arabia to examine the sirens. Does that accurately reflect the record, though, Mr. Zahar? We're . . . your argument pitches it as if it's the District Court's call and that the District Court changed the dynamic of the case. But isn't the District Court reacting to the years of litigation or non-litigation preceding? So preceding even the litigation, our client had made complaints with both the defendant, the Business Bureau, and even the United States Embassy with regards to the sirens. They've invited the defendant . . . Let's go to the timeframe then between the filing of the complaint and the final pretrial conference when the 90-day outline was described in that timeframe. That's a set of procedure and factual circumstances the District Court is reacting to when he's setting these three requirements, right? Yes. And so during the litigation of the case when the defendant had requested to examine the sirens, we even have emails where we have told the defendant, once you enter Saudi Arabia, we will accommodate you. We had no objections to them examining the sirens. It would have been beneficial for us for them to examine the sirens and then they'll have that opportunity and we can proceed to trial. We had no issues with them traveling to Saudi Arabia to examine the sirens. The issue is them actually traveling to Saudi Arabia. I cannot control the defendant's travel. Mr. Zahra, is my understanding correct that Robert Bassil, that's his name, right, who was with or formerly with American Signal, he traveled to Saudi Arabia during the installations, right? That's correct. And so the . . . I guess, and I'm going to ask Mr. Harvey the same question. So American Signal had sent people over to Saudi Arabia, one would think, and so I'm just kind of confused looking at this record number because it seems like, you know, American Signal had sent people to Saudi Arabia before, so it's not like they were completely in the dark in how to go about doing it. And so I'm just trying to understand what the hang-up was here. So, and again, so my client is a contractor, they're a separate entity. Where the sirens are located, they're on government property. And so we had informed the defendant that come to Saudi Arabia, just make sure that, you know, you get all the acceptable requirements to travel. You know, get that permission that, hey, I'm coming, who's going to Saudi Arabia, who's going to be examining the sirens, and so on and so forth. And so that was where the hang-up was, is they had applied for those and whether they got it or not is on their end. That was not on our end. We have been ready for them to come to Saudi Arabia. We were going to accommodate them once they got there as the appellant. And that was it. But Mr. Sahr, they had to move to compel before the magistrate, Judge Duffin, to get the specific names and addresses of the individuals who granted Nextel its export access. So it just seems like the narrative that we're receiving is one of cooperation. When one looks at the discovery in the docket sheet, it's one of real difficulty defending the case because of plaintiff's non cooperation. I want to give you a chance to respond to that. And so, Your Honor, briefly for that, we had we had given them the name and they had also applied back in April. And back in April, they had applied and we didn't know if they got a response. And then even after we gave them the name of the individual, we still don't know if they got a response or not as as the appellant. So it never really changed. And then they had also said that they had visas back then. And then in an email to Appellant's Counsel in May of last year, they had told us that they needed letters of invitation from the government in order to obtain visas, which has never been heard of. If they had if they had the visas prior, then they would have had to have those letters of invitation before based on their their own argument. Mr. Zara, the in your brief, you say that in your outline, you say that the. You were looking at the months of July and August 2023, by the time you submitted your plan, had you received permission from Saudi Arabia to conduct the inspections? Our understanding is, yes, we were going to be allowed to inspect the sirens. And that's why we get you what are the parties, the parties, the parties, the parties. And that's why we said between July and August, you know, and we think we would have been able to work on a firm date. And I do want to reserve some time for rebuttal. Your honors is very good. Thank you, Mr. Zaha. We'll now move to Mr. Harvey for argument on behalf of the Appalachian American Signal Corporation. Thank you, your honor, may it please the court for decades, this court's case law has made it abundantly clear that trial courts have very broad discretion to control their own dockets. And so that's why in the Daniels case, for example, this court held it was entirely appropriate for the trial court to dismiss the plaintiff's case for failure to prosecute and also to deter other litigants from engaging in similar tactics going forward. And in this case, the trial court did, as Daniels instructed, reviewed the whole procedural history of the case, not just this 90 day window and held in its discretion that the appropriate remedy was to dismiss the plaintiff's claims. But it didn't do that lightly, not even close, because what trial court first did in its order makes clear that it looked the whole three year history of this case and the plaintiff's conduct in it up to the point where the case has been pending for three years now. It's supposed to be going to trial in two weeks. In 35 years on the bench, I've never seen a case so ill prepared for trial. Mr. Harvey, can I ask you a question? Yes. So the defendant filed their answer to the Second Amendment complaint on August 17, 2020. That's correct. Okay. Rule 16 then requires the district judge to issue a scheduling order as soon as practicable thereon. I don't see any order in the docket, no Rule 16 scheduling order, until July 14, 2021. Can you explain for me why there was a year delay between when the defendant filed the Second Amendment complaint, which would have triggered the district court's obligation under Rule 16, and when the district court finally got around to issuing a Rule 16 scheduling order? I'm obviously not privy to the court's internal deliberations, so I don't have a clear answer for you on that. There was nothing communicated to the parties. Obviously, the pandemic was going around that time, but nothing was communicated to the parties. But that point goes to another issue. And your client didn't reach out to the plaintiff for a Rule 26 conference. And the plaintiff hadn't reached out to you either. It's kind of like the obligations on both sides. But that didn't take place until June 11, 2021. So that's nearly a year after the pleadings were set that neither side reached out to one another to even have a discussion about a Rule 16 scheduling order. And so, you know, dismissing a case is pretty severe sanctions. And I'm just trying to figure out, you know, what was going on in that time period. Were the parties discussing this issue? There's something in the briefs about there were some discussions between the parties about trying to figure out what was wrong with these sirens and what's going on. Was that going on at the time, or what was going on? The parties were in communication about certain matters, but not specifically about discovery. I initiated the discovery conversation, even though I am the defendant, and I never initiate that discussion. It's always the plaintiffs who want to charge forward. And I finally reached out and said, you know, counsel, this case has been pending for almost a year. As well you should have. Yeah. And I said, we need to get going on discovery. The response I got was, well, the judge expects us to move forward with discovery anyways. And the response I got was a threatened motion for sanctions, as though I had done something improper by suggesting we should move forward with discovery 18 months into the case. So that goes to Daniel's talks about a lack of prosecutorial intent. I have no idea why Nextel waited that long to initiate discovery and then to suggest I should be sanctioned for suggesting we go forward with it. Can you answer the question that I asked Mrs. Zara with regard to Robert Bassel? He had clearly traveled to Saudi Arabia during the installation. And so I was trying to understand like, what was it that your client was trying to obtain or overcome to try to do these inspections? Because I see that your client filed motions to compel the names and the contacts, but there was no motion to file a motion to compel the inspection itself, right? Well, this goes to the long tortured history of the case. In July 2021, when I finally got opposing counsel to talk to me about scheduling and discovery and things of that nature, one of the first things I said, as Judge Kirsch suggested, was we need to inspect these things quite obviously. And they agreed. We do counsel. It was a former local counsel, Edward, said I agree. And we had productive discussions because I was being led to believe. Remember the allegation is that the government of Saudi Arabia rejected everyone in these sirens, rejected all of them. And so I said, well, I assume Nextel, you must have all the sirens somewhere because the government rejected them. And I was proceeding under that assumption because I was led down that path from July 2021 through March 2022, the whole time we were having discussions and I was led to believe that Nextel would be giving me access to test these sirens. Finally, in March 2022, local counsel Edwards drops out of the picture and the other counsel pops in and all of a sudden we get disclosed. We can't give you access to test the sirens. All of a sudden at this point, well, how can that be? The government rejected them. I thought you said, well, the government's got all of them. They've got complete control of them. So we say, well, that's the case. How did your expert get access to them to file a report in January 2022? You must have some inside connection. You can facilitate these. Help us do that. Wouldn't do it. And that's why we filed a motion to compel. Give us the names of the people you were talking to so we can at least write them a letter. Did you consider filing a motion to compel the inspection itself? It was basically wrapped up in the same motion. I mean, we discussed the issue, I believe, at the motion to compel hearing that the shifting story is how do you go from saying the government rejected these sirens so we must have them to saying, well, now the government's got them. And this is six years later, by the way. Why does the government still have these sirens? So we were understandably confused and a little whipsawed to be candid. Why didn't American Signal move for summary judgment? Well, a couple of reasons. We didn't have an evidentiary record because that was another problem with Nextel's discovery practices. They treated discovery like a one-way street, like they were allowed to unilaterally decide what material was discoverable. So, for instance, one of the most egregious, we said, all right, Nextel, your claim is that the government rejected every one of these sirens. There must have been a reason. There were 750 of them. They were spread throughout Saudi Arabia. There had to have been reams of communications between the government and Nextel who installed them to explain why the government was rejecting them. So we served some vanilla discovery. Produce all communications between you and the government so we can see exactly what the government was complaining about. Was it an installation issue? What were they upset about? Nextel, we're not going to produce those. And I think they said they're not going to produce them because the district judge had found that the relationship between Nextel and the Saudi Arabian government was irrelevant to the case. That was an offhand comment at a status hearing. That was not a formal motion hearing. I understand. But then what I find troubling about, I mean, there's lots of things I find just strange about how the proceedings were done here. But then the magistrate judge, when looking at the motion to compel, then takes that stray comment and says, well, this is what the district court wants and I'm not going to touch that. So you're right, which again kind of befuddled me. And so I'm just trying to make sense of this looking at the record. Well, we objected to the magistrate's ruling and I believe the trial court, as trial was starting to get closer and closer, as most trial judges do, started digging into the record and looked at the discovery practices and that was why we got this decision that's referencing we're going to do this through bank accounts. Because that was another issue. The allegation was the government rejected these. We didn't get paid a penny for them. And okay, except that there's an email in the record that suggests that the government paid everything except for $2.7 million, which in their world, that's called retainage. It's a term of art. And it's 10%, which means the contract was $27, $28 million. So that suggests that they got paid $25 million or something along those lines. So we said, well, how can the government have not paid you anything and yet here's an email from your own person talking about the only thing left that hasn't been paid is $2.7 million in retainage, something along those lines. And I have a correspondence from their counsel that says the exact same thing, that they did get paid after they'd been denying getting paid. So obviously we're not going to rely on their word. We can't trust a thing they're saying. We served discovery and said let us see your bank accounts. Let's see. And if you want to put attorney's eyes only, that's fine. But we're entitled to this very basic discoverable information. Next L. No, we're not producing it. And that's why I think the trial court by the end is referencing we're going to look at bank accounts because there's some serious concerns here. And when I was looking through the docket, I noticed discovery cutoff. The original trial date was October 24, 2022, right? Correct. And it seems like it says discovery cutoff is 30 days before that date. Is that correct? Yes. And so the court didn't provide a summary judgment schedule. It just said discovery is ending on day one. We're going to trial on day 30, whatever. The court's standard pretrial order, I may be using the wrong phrase, has a very detailed summary judgment provision in it that involves a lot of stipulations that the parties have to come to and we weren't going to be able to come to one. That became clear. And it says you can't file a summary judgment motion if you don't have these stipulations. And did the court ever give you a deadline to file a summary judgment motion? I don't recall off the top of my head, although that may be addressed in the standard pretrial order. And that's particular to Judge Stattmiller, not E.D. West. Correct. If I'm remembering correctly. I mean, it's pretty difficult to file a summary judgment motion when discovery is closing 30 days before trial. I would agree. And from my experience, I haven't practiced in a while, but it just seems to me. And I would agree. I see my time's up. So unless there are additional questions, we're asking that the court affirm. Thank you, Mr. Harvey. Mr. Zahir, we'll go back to you now for rebuttal argument. Your Honor, there's one thing I want to address first in that time frame after the amended complaint and the initial scheduling order. The parties were engaged in attempts to resolve the issues between the parties without going too much further into those what was actually going on between them in that time. So there were those attempts as well. So it wasn't just the period of nothing was happening until July 2021. With respect to the the sirens and their locations, they were rejected. But these sirens, they're not, you know, sirens that are hanging where, you know, for example, my life is hanging there on 70 to 100 foot poles. They're heavy. They're all around Saudi Arabia's eastern province. They're not in one local city. And the province spans thousands of miles. And they weren't they weren't removed from the poles. There's been every attempt by my client to try to resolve the issue with the sirens to hand the sirens over to the government for final acceptance of the goods. The goods have been rejected by the government. The government at the end of the day wants working goods. And our client's goal was to get working goods. And that's how this lawsuit came to be. Another thing is with respect to the defendant going to examine the sirens, they've had an agent in Saudi Arabia since prior to the lawsuit beginning. This agent's helped them get the send their bid into the government and to the plaintiff to produce and manufacture the sirens. So that agent could have assisted them in many ways. One way was helping them get their visas if they needed it. Another way was to help them get somebody to examine the sirens if they needed that as well. So they've had that individual there. The questions right now is in this case, was was the case prosecuted? And again, by by the actions of the parties, we filed all of our documents that we believed were necessary for trial and that we believe, at least on the plaintiff's end, would prove our case in chief and prove our case. You know, we had all of our exhibits ready. We had all of our witnesses ready. We had all of our documents ready. We had the jury instruction sent. We had the jury verdict form sent. We had our pre-trial report sent. We had our deposition transcripts that we were going to use as well. And those are all listed and those are all provided to the court. So on our end, at least we were ready and we believe the defendant was ready as they sent over, I believe it was over 600 exhibits as well. They sent in their proposed jury instruction. They sent in, they had all their witnesses ready to testify as well. And for that reason, Your Honor, we believe that the district court abused, Your Honors, we believe that the district court abused its discretion in dismissing the case for failure to prosecute. And we respectfully request that Your Honors reverse the district court's dismissal and allow this case to proceed to trial. I see my time is up, Your Honors. I thank you for your time. Thank you, Mr. Zahar. Thank you, Mr. Harvey. The case will be taken under advisement. Thank you, Your Honors.